UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIOM GULINIAN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM et al.,<br><br>　　　　　　Respondents. | Case No. 5:26-cv-00833-MCS-PVC<br><br>**ORDER RE: MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NO. 5)** |

　　　　Petitioner Artiom Gulinian brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order and preliminary injunction. (Appl., ECF No. 5-1.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 6.) Respondents Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; Pamela Bondi, in her official capacity as Attorney General; Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Jaime Rios, in his official capacity as Acting Director of the Los Angeles ICE Field Office; Fereti Semaia, in his official capacity as Warden of Adelanto Detention Facility; U.S. Department of Homeland Security; and ICE filed a brief opposing the application.

(Opp'n, ECF No. 8.)[1] Petitioner filed a reply. (Reply, ECF No. 9.)

The Court heard the application on March 2, 2026. (Mins., ECF No. 10.) The parties stipulated at the hearing that the Court could consider the application as a motion for a preliminary injunction. For the reasons discussed herein, the Court grants in part Petitioner's motion for a preliminary injunction.

I.     BACKGROUND

According to the petition and application materials, Petitioner was born in the U.S.S.R. and entered in the United States in 1992 when he was twelve years old. (Pet. ¶ 38; Gulinian Decl. ¶ 1, ECF No. 1-1.) Petitioner contends that he is not a citizen of any country, (Pet. ¶ 2; Gulinian Decl. ¶ 1), while Respondents contend that he is a citizen of Armenia, (Lajuj Decl. ¶ 5, ECF No. 8-1). After serving a jail sentence for a criminal conviction, Petitioner was ordered removed to Armenia on August 2, 2016. (Pet. ¶ 40; Gulinian Decl. ¶ 5.) On December 21, 2016, Petitioner was released pursuant to an Order of Supervision because ICE was unable to obtain travel documents to remove him. (Pet. ¶ 41; Gulinian Decl. ¶ 6.) During the nine years that Petitioner was under the Order of Supervision, he complied with all terms, completed all check-ins, and has not had any new arrests or criminal convictions. (Pet. ¶ 41; Gulinian Decl. ¶ 7.) Petitioner has been married to a U.S. citizen for ten years and has a U.S. citizen child who is six months old. (Pet. ¶ 39; Gulinian Decl. ¶ 4.)

On February 3, 2026, Petitioner appeared for a scheduled check-in with ICE. When Petitioner entered the office, officers "immediately handcuffed" him and told him that his supervised release was revoked. (Pet. ¶ 42; Gulinian Decl. ¶ 8.) The officers told Petitioner that he should give his belongings to his wife. (Pet. ¶ 43; Gulinian Decl.

---

[1] Respondents filed their response at 2:49 p.m. on February 25, 2026, two hours and 49 minutes after the 12:00 p.m. deadline set by the Court's prior order. (Order Setting Br. Schedule 2.) The Court exercises its discretion to consider Respondents' untimely response.

1  ¶ 9.) Accordingly, Petitioner gave her the items he had brought with him, including his immigration-related paperwork. (Pet. ¶ 43; Gulinian Decl. ¶ 9.) An officer gave Petitioner a Notice of Revocation stating that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate the removal" and that "ICE is seeking a travel document to affect [sic] your expeditious removal to Armenia. (Pet. ¶ 44 (internal quotation marks omitted); *see also* Lajuj Decl. Ex. A, at 1, ECF No. 8-2.) An officer asked Petitioner if there was any reason ICE should not detain him. (Pet. ¶ 46.) Petitioner responded that he had brought his immigration paperwork with him but had given it to his wife, and the officer replied "that it would not matter anyway." (*Id.*; Gulinian Decl. ¶ 11.) A form memorializing Petitioner's informal interview indicates that he stated in response to the Government's reasons for revocation, "I have 5 million dollar[s] escrow[,] my entire family is here[,] all my businesses are here." (Lajuj Decl. Ex. B, ECF No. 8-3.) After this, Petitioner was taken to a holding cell and transferred to Adelanto Detention Center, where he remains today. (Pet. ¶¶ 46–47; Gulinian Decl. ¶ 12.)

Petitioner raises five grounds for habeas relief: (1) violation of his Fifth Amendment right to procedural due process; (2) unlawful revocation of release; (3) violations of the procedures for revocation of release; (4) unauthorized revocation of release; and (5) unlawful detention where removal is not reasonably foreseeable. (Pet. ¶¶ 50–70.) Petitioner seeks a temporary restraining order and preliminary injunction requiring his immediate release, enjoining Respondents from revoking his release without individualized evidence that his removal is reasonably foreseeable and providing specific notice of changed circumstances to which Petitioner can respond. (Appl. 25.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant motion is pending. (Order Setting Br. Schedule 2.)

///

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention."). The Court concludes that Petitioner is likely to succeed in part on the merits of his Fifth Amendment procedural due process claim. (Pet. ¶¶ 50–54; Appl. 15–21.)[2]

Detention, release, and removal of individuals subject to a final order of removal

---

[2] The Court does not opine on Petitioner's likelihood of success on the merits of his other claims.

4

is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Generally, the Attorney General must remove a noncitizen within 90 days of a final removal order. 8 U.S.C. § 1231(a)(1)(A). If the noncitizen is not removed during that period, he or she "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

8 C.F.R. §§ 241.4 and 241.13 govern both the release of noncitizens pursuant to 8 U.S.C. § 1231(a) and the revocation of that release. *Hashemi v. Noem*, No. 2:25-cv-10335-HDV-SR, __ F. Supp. 3d __, 2025 U.S. Dist. LEXIS 250316, at *13 (C.D. Cal. Nov. 19, 2025). Both sections permit the government to revoke a noncitizen's release when the noncitizen violates the terms and conditions of release, as well as when the government determines, based on "changed circumstances," that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. §§ 241.4(l)(1), 241.13(i). The regulations also establish required processes the government must follow when it revokes a noncitizen's supervision. *See id.* §§ 241.4(l)(1), 241.13(i)(3). The regulations require that the noncitizen (1) be "notified of the reasons for revocation of his or her release," and (2) receive "an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* §§ 241.4(l)(1), 241.13(i)(3).

To comport with due process, a notice of revocation must provide more than "[c]onclusory assertions that a detainee can be removed from the United States." *Majd v. LaRose*, No. 26-cv-0245-JES-BLM, 2026 U.S. Dist. LEXIS 12985, at *6 (S.D. Cal. Jan. 22, 2026) (collecting cases). Rather, the notice must provide particular changed circumstances that apply to the noncitizen specifically, so that the noncitizen has an opportunity to challenge the asserted reasons. *See J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO (HC), 2025 U.S. Dist. LEXIS 224967, at *19 (E.D. Cal. Nov. 14, 2025) (finding notice insufficient where "the notice of revocation of release did not provide any specific changed circumstance applicable to petitioner"). In addition, the

informal interview that the regulations require must provide the noncitizen with "an opportunity to be heard on the revocation 'in a meaningful manner.'" *Ramos v. Noem*, No. 5:26-cv-00064-MEMF-ADS, 2026 U.S. Dist. LEXIS 23662, at *14 (C.D. Cal. Feb. 4, 2026) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *see also J.L.R.P.*, 2025 U.S. Dist. LEXIS 224967, at *18 ("[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner." (alteration in original) (internal quotation marks omitted)).

A growing number of courts have concluded that "the government's failure to follow its release revocation procedures," especially the failure to provide a noncitizen notice and an interview, "renders the re-detention unlawful" because it violates the noncitizen's due process rights. *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 U.S. Dist. LEXIS 194376, at *14 (C.D. Cal. Aug. 28, 2025) (collecting cases); *accord Morales Sanchez v. Bondi*, 5:25-cv-02530-AB-DTB, __ F. Supp. 3d __, 2025 U.S. Dist. LEXIS 262536, at *8 (C.D. Cal. Dec. 5, 2025) (concluding that "ICE's compliance with the regulatory framework is a proper and enforceable basis for review").

Here, Petitioner contends that ICE violated 8 C.F.R. § 241.13(i)(3) when it revoked Petitioner's release and, in so doing, violated Petitioner's right to procedural due process. (Pet. ¶¶ 50–54.) In particular, Petitioner argues that (1) he did not receive adequate notice for the revocation of his release, (*id.* ¶ 53), and (2) his informal interview did not provide him with an opportunity to meaningfully respond to the basis for revocation, (*id.* ¶ 54). Petitioner argues that the notice of revocation did not provide specific factual allegations concerning the reasons for the revocation to which he could respond, (Appl. 16–17), and that the informal interview he received violated his due process rights because, among other things, he was told to leave his belongings, which included his immigration paperwork, with his wife, (*id.* at 17–18). Respondents disagree, arguing that they complied with ICE's regulations by providing Petitioner with a written notice of revocation and informal interview immediately upon detention.

(Opp'n 7–8.)

The Court concludes that the notice of revocation adequately notified Petitioner "of the reasons for revocation of his . . . release." 8 C.F.R. § 241.13(i)(3). The notice states:

> Your release has been revoked pursuant to 8 C.F.R. § 241.4(l), for the following reason(s):
>
> . . .
>
> It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal.
>
> . . .
>
> ICE is seeking a travel document to affect [sic] your expeditious removal to Armenia.

(Lajuj Decl. Ex. A, at 1.) Although relatively conclusory, the notice does state specifically why there are changed circumstances specific to Petitioner's removability—ICE is seeking a travel document to effect his removal to Armenia—and adequately provides Petitioner with an opportunity to respond to the reasons for revocation.

However, the informal interview Petitioner received was inadequate to provide Petitioner with an opportunity to meaningfully respond to the revocation of release. Petitioner submits that an immigration officer instructed him to leave all his possessions with his wife, and, as a result, he left his immigration paperwork behind and did not have it with him when the officer conducted the informal interview. (Gulinian Decl. ¶¶ 9, 11.) Petitioner also contends that the officer told him that it "would not matter anyway" whether he had evidence to present on his behalf. (*Id.* ¶ 11.) Further, Petitioner asserts that the officers did not instruct him to review the notice of revocation "or even give [him] the opportunity to do so." (*Id.* ¶ 10.) In addition, Petitioner's oral statement on the informal interview form is nonresponsive as to the reasons why his release was

revoked, suggesting that Petitioner may not have understood the basis for the revocation. Petitioner stated that he had money in escrow and that his family and business were here in the United States, but the form does not reflect any statement from Petitioner concerning the likelihood of his removal to Armenia. (*See* Lajuj Decl. Ex. B.) Based on the limited evidence in the record, it does not appear that Petitioner understood the notice he received or the reasons why his release was revoked.

An informal interview under these circumstances does not comport with ICE's regulations or with due process. *See, e.g.*, *Hashemi*, 2025 U.S. Dist. LEXIS 250316, at *15–16 (C.D. Cal. Nov. 19, 2025) (concluding informal interview did not provide meaningful opportunity where petitioner did not provide an oral response or written statement and "did not understand what was happening"); *Kiwana v. LaRose*, No. 3:25-cv-3678-JES-SBC, 2026 U.S. Dist. LEXIS 8504, at *15 (S.D. Cal. Jan. 14, 2026) ("[W]hen the informal interview is conducted on the same day that the Notice is issued, the Government essentially bars the noncitizen from being able to submit any evidence or information that may show that the revocation of their release is unlawful."); *Hagos v. Noem*, No. 3:26-cv-150-JES-DEB, 2026 U.S. Dist. LEXIS 15047, at *10 (S.D. Cal. Jan. 27, 2026) (concluding similarly). The Court concludes that Petitioner lacked a meaningful opportunity to respond to the revocation of his release. As a result, ICE violated its own regulations and Petitioner's right to procedural due process under the Fifth Amendment.

For these reasons, Petitioner is likely to succeed on his procedural due process claim.

### B. Irreparable Harm

Petitioner has established irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention

constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Given the Court's determination that Petitioner is likely to succeed on the merits of his procedural due process claim, Petitioner faces irreparable harm absent injunctive relief.

### C. Balance of Equities and Public Interest

The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *23 (E.D. Cal. July 11, 2025) (alterations in original) (quoting *Hernandez*, 872 F.3d at 996). These factors favor relief.

### D. Scope of Relief

Petitioner seeks an order requiring his immediate release and enjoining Respondents from revoking his release without both individualized evidence that his removal is reasonably foreseeable and specific notice of changed circumstances to which Petitioner can respond. (Appl. 25.) Respondents contend that the relief for a procedural deficiency in the revocation of Petitioner's release should not be Petitioner's immediate release from custody, but rather should be narrowly tailored to the specific defect at issue. (Opp'n 8–9.)

9

1     "An injunction must be 'narrowly tailored to remedy the specific harm shown.'" *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (quoting *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018)). The Court concludes that ordering Petitioner's immediate release goes beyond what is necessary to remedy Petitioner's constitutional injury. The only procedural due process violation the Court perceives in Respondents' revocation of Petitioner's release is the lack of opportunity for Petitioner to meaningfully respond to ICE's revocation of his release, based on his lack of opportunity to provide evidence and his nonresponsive statement to the immigration officer concerning the revocation. These procedural deficiencies can be remedied by providing Petitioner with an informal interview forthwith. Such a remedy is consistent with the relief other courts have ordered and is narrowly tailored to address the specific due process violation Petitioner suffered. *See, e.g.*, *Pogosyan v. Bondi*, No. 5:25-cv-03121-SRM-AS, 2025 U.S. Dist. LEXIS 269696, at *24 (C.D. Cal. Dec. 3, 2025) (requiring that ICE provide an informal interview within seven days where petitioner contended she did not receive a prompt opportunity to be heard about violations of conditions of her release); *Lam v. Noem*, No. 5:25-cv-03344-CV (RAO), 2026 U.S. Dist. LEXIS 28531, at *19 (C.D. Cal. Feb. 5, 2026) (enjoining respondents from continuing to detain petitioner unless he received a notice of revocation and an informal interview "afford[ing] him an opportunity to be heard as to the revocation" within seven days).

### E. Summary

All factors favor injunctive relief. The Court grants in part a preliminary injunction requiring that Respondents provide Petitioner with an informal interview by March 10, 2026.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal

quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal harms suffered by the government, the Court will not require a security.").

## IV. CONCLUSION

The Court grants the motion in part. The Court issues a preliminary injunction as follows:

(1) Respondents, their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are ordered to provide Petitioner with an informal interview by March 10, 2026, as required under 8 C.F.R. § 241.13(i)(3).

(2) Respondents shall submit a declaration from the ICE official who conducted the interview by March 12, 2026.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: March 3, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE